NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1173
_____

UNITED STATES OF AMERICA

v.

NELSON LORA-PENA,
                                        Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D. Del. Crim. No. 05-cr-00047)
District Judge:  Honorable Joseph J. Farnan, Jr.

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 30, 2010

Before:  SMITH, FISHER and GARTH, Circuit Judges.

(Filed: March 31, 2010)
_____

OPINION
_____

PER CURIAM.

        Nelson Lora-Pena, a federal inmate, appeals the denial of his post-conviction

motion under 28 U.S.C. § 2255.  For the reasons that follow, we will affirm.

I.

The parties are familiar with the facts and procedural history, and thus we merely summarize the background here. Four members of the United States Marshals Service (accompanied by Delaware State Troopers) executed a warrant to arrest Lora-Pena at his home in Delaware for having violated a supervised-release term imposed in Rhode Island. Lora-Pena attempted to flee when the Marshals appeared at his front door. After they entered the home and warded off an attack by Lora-Pena's two pit bulls, Lora-Pena engaged in a violent physical struggle with Deputy Marshal Jack Leo ("Marshal Leo"), during which he repeatedly grabbed at, tried to take, a semi-automatic rifle that Marshal Leo was holding in a sling across his chest. As Lora-Pena pulled at the rifle and assaulted Marshal Leo, the rifle discharged, sending a bullet through the front door of the home (causing no injury). The officers eventually subdued and arrested Lora-Pena.

A jury in the District Court for the District of Delaware convicted Lora-Pena on three counts of assaulting federal officers, 18 U.S.C. § 111(a)(1)-(b), and one count of resisting arrest, 18 U.S.C. § 111(a)(1). The trial testimony did not establish whether it was Marshal Leo or Lora-Pena who discharged the rifle during their struggle; Marshal Leo assumed that Lora-Pena pulled the trigger, but he was unsure how the weapon had discharged. The jury was not asked to decide whether Lora-Pena used or fired the rifle, as that question was not an element of the offenses charged.

At sentencing, the District Court increased Lora-Pena's base-offense level by five levels under U.S.S.G. § 2A2.2(b)(2)(A) because "a firearm was discharged." The District Court found that this enhancement was warranted because the rifle was fired as a direct result of Lora-Pena's struggle with Marshal Leo. The District Court imposed a term of eighty-seven months in prison for the convictions, plus a consecutive five-month term for violating supervised release. This Court affirmed. United States v. Lora-Pena, No. 06-1077, 227 Fed. App'x 162 (3d Cir. April 13, 2007).

Lora-Pena timely filed a § 2255 motion. The District Court denied relief without an evidentiary hearing, and Lora-Pena timely filed this appeal. We granted a certificate of appealability limited to two issues: (1) whether Lora-Pena's counsel was ineffective on direct appeal for failing to raise a claim that the § 2A2.2(b)(2)(A) enhancement was improperly applied in the absence of a factual determination that Lora-Pena had discharged the rifle; and (2) if § 2A2.2(b)(2)(A) was improperly applied, whether the government's failure to disclose a Delaware State Trooper's report regarding Lora-Pena's arrest violated Brady v. Maryland, 373 U.S. 83 (1963).

We have appellate jurisdiction under 28 U.S.C. §§ 1291, 2253, and 2255. Because the issues identified in the certificate of appealability raise legal questions, our review is plenary. See United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007).

3

II.

(1)    Ineffective assistance of appellate counsel

Lora-Pena claims that appellate counsel was ineffective for not challenging the

§ 2A2.2(b)(2)(A) enhancement because, he maintains, it was Marshal Leo who

accidentally discharged the firearm while struggling to subdue Lora-Pena, and there was

no finding that Lora-Pena had discharged the weapon.  The record reflects that Lora-Pena

asked appellate counsel to challenge the enhancement, but counsel declined because he

believed the issue had little or no chance of success.

Lora-Pena's trial counsel had objected to the enhancement at the time of

sentencing, but the sentencing court accepted the recommendation of the Probation Office

and applied it.  The court explained that, "[g]iven the verdict of the jury and the evidence

which I, myself[,] heard to a preponderance of the evidence, . . . [the] weapon was

discharged as a result of and as a direct consequence of the struggle which was going on

between [Leo] and the defendant."

In this § 2255 proceeding, the District Court (a different judge than the sentencing

judge) denied relief on the ground that Lora-Pena could not show prejudice from

counsel's refusal to challenge the enhancement on appeal.  While noting the conflicting

trial testimony of Marshal Leo and Lora-Pena as to how the firearm discharged,[1] the

---

[1]Essentially, Lora-Pena testified that he never assaulted Marshal Leo, and that the officers used excessive force to subdue him.

4

District Court explained that it must respect the jury's credibility assessment for purposes of conducting habeas review. In light of Marshal Leo's credible trial testimony, the District Court concluded that the sentencing court's finding that the weapon discharged as a direct consequence of the struggle was supported by the record, and thus that factual determination was unlikely to have been disturbed on direct appeal.

The District Court also rejected the argument that § 2A2.2(b)(2)(A) applies only if the defendant is found to have discharged the firearm, observing that the plain language of the provision draws no distinction between an accidental and purposeful discharge, and does not require a defendant to have possessed the firearm. Further, in looking to the definition of relevant conduct under U.S.S.G. § 1B1.3(a)(1)(A), an enhancement is appropriate for accidental discharge of a firearm if the defendant induced or willfully caused the struggle in which the firearm was discharged. Because Lora-Pena's conduct met this standard, the District Court held that he could not show that this Court likely would have rejected the enhancement on appeal.

We fully agree with the District Court's prejudice analysis, and will affirm on that basis. A claim of ineffective assistance required Lora-Pena to show that counsel's performance fell below an objective standard of reasonableness, and to show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687 (1984). Where "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

prejudice . . . that course should be followed." Id. at 697. To establish prejudice, Lora-Pena must show a likelihood that this Court would have reversed the sentencing court's application of the enhancement. See id. at 694-95.

Insofar as Lora-Pena wished to challenge the sentencing court's factual determination regarding discharge of the firearm, that argument would have failed on appeal. While Marshal Leo could not say for sure that Lora-Pena pulled the trigger on the rifle, he testified at trial that Lora-Pena had tried repeatedly to grab the rifle and to take it from him, and in doing so had caused the rifle to discharge. Marshal Leo explained that, "[a]s part of the struggle, periodically he would grab that weapon and try to pull it away from me, grab my hand holding that weapon, dig his nails into my hand that was holding that weapon. Basically, he was trying to get it. . . . Although at that point, it really got stepped up because while he was clawing at my hands and trying to get the rifle, he caused it to discharge or fire a round through this [front] door here and out into the neighborhood."

Lora-Pena strongly disputes Marshal Leo's version of events. He claims that Marshal Leo fabricated his trial testimony, and that in fact he never tried to disarm Marshal Leo and had no direct role in the discharge of Marshal Leo's rifle. See Appellant's Br. at 9-12; Reply Br. at 5. However, for purposes of this § 2255 proceeding, the District Court correctly held that the jury's determination of guilt on the charge that Lora-Pena assaulted and caused bodily injury to Marshal Leo carried an implicit

6

determination that Marshal Leo's trial testimony was, in fact, more credible than Lora-Pena's own version of events, which the jury also heard at trial. As such, the District Court did not err in accepting Marshal Leo's testimony as conclusive with regard to the events surrounding his struggle with Lora-Pena, and we note that Lora-Pena offers no basis at all upon which to question the jury's assessment of Marshal Leo's credibility in this post-conviction review proceeding. Consequently, Lora-Pena has failed to show a reasonable likelihood that this Court would have reversed the sentencing court's finding that the rifle was discharged as a direct result of his struggle with Marshal Leo.

Nor has Lora-Pena shown that the sentencing court's application or interpretation of § 2A2.2(b)(2)(A) would have been disturbed on appeal. "When construing the Guidelines, we look first to the plain language, and where that is unambiguous we need look no further." United States v. Brown, 578 F.3d 221, 227 (3d Cir. 2009) (quotation marks omitted). Section 2A2.2(b)(2)(A), by its terms, requires a five-level increase in offense level if "a firearm was discharged" during an aggravated assault offense. As the District Court correctly noted, this language does not distinguish between accidental and purposeful discharges, and does not require a finding that defendant pulled the trigger.[2]

---

[2]Cf. Dean v. United States, 129 S. Ct. 1849, 1853 (2009) (observing that statute providing that defendant shall be sentenced to minimum of 10 years "if the firearm is discharged" does not, by its terms, require that the discharge be done knowingly or intentionally, and adding that "Congress's use of the passive voice further indicates that [the plain language] does not require proof of intent. The passive voice focuses on an event that occurs without respect to a specific actor, and therefore without respect to any actor's intent or culpability.").

7

Simply stated, Lora-Pena cannot show that his offense conduct is beyond the reach of § 2A2.2(b)(2)(A)'s plain terms. As noted, Lora-Pena caused Marshal Leo's rifle to discharge by assaulting Marshal Leo and trying to take the weapon. We are satisfied that the sentencing court's failure to determine whether Lora-Pena himself pulled the trigger is immaterial in the circumstances presented here, where a firearm was discharged as a direct result of a defendant's violent attempt to take that firearm from the officer.

Moreover, we agree with the District Court that Lora-Pena was subject to the § 2A2.2(b)(2)(A) enhancement by virtue of § 1B1.3(a)(1)(A), which defines relevant conduct in determining specific offense characteristics to include "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." Lora-Pena's decision to struggle with Marshal Leo was, as the sentencing court found, the direct cause of the rifle's discharge. Thus, by his actions, Lora-Pena "willfully caused" Marshal Leo's firearm to discharge. Cf. United States v. Roberts, 203 F.3d 867, 870 (5th Cir. 2000) (defendant "unquestionably induced and willfully caused" officer to fire gun where officer "feared for his life and sought to empty his weapon to prevent [defendant and an accomplice] from using his own gun on him"). Because discharge of the firearm was within the scope of relevant conduct, it was properly considered by the sentencing court in setting the offense level.[3]

---

[3]Lora-Pena relies primarily upon United States v. Gordon, 64 F.3d 281 (7th Cir. 1995). In Gordon, defendant was committing a bank robbery when a guard put a gun to his back and warned him not to struggle. When defendant chose to struggle, the guard

For these reasons, Lora-Pena has not shown prejudice from counsel's performance on direct appeal, and thus § 2255 relief was properly denied on this claim.

(2)     Brady claim

Lora-Pena next claims that the government impermissibly withheld a Delaware State Trooper's report regarding his arrest; it appears that Lora-Pena obtained a copy of the report sometime after trial through a FOIA request. The Trooper, who was not a witness to the events and did not testify at Lora-Pena's trial, states in the report that "during a lengthy struggle with [Lora-Pena], a firearm was accidentally discharged by a U.S. Marshal." Because the report indicates an accidental discharge, Lora-Pena argues that it had to be turned over under Brady because he could have used it at sentencing to

---

intentionally shot him. The Court of Appeals refused to hold that defendant induced or willfully caused discharge of the guard's firearm. The Court adopted the view that the terms "induce" and "willfully cause" "contain an element of specific volition, an actual intent or desire that one's actions create the specific result," id. at 283, and the Court could not find that defendant desired the guard to shoot him. We note that other courts have questioned Gordon's "specific volition" interpretation of § 1B1.3(a)(1). See, e.g., Roberts, 203 F.3d at 870; United States v. Molina, 106 F.3d 1118, 1123 (2d Cir. 1997); United States v. Williams, 51 F.3d 1004, 1011 (11th Cir. 1995); see also Dean, 129 S. Ct. at 1855 (observing that while "[i]t is unusual to impose criminal punishment for the consequences of purely accidental conduct[,] it is not unusual to punish individuals for the unintended consequences of their unlawful acts").

It appears that this Court has not previously considered Gordon's reading of § 1B1.3(a)(1), but we see no need to do so here. We find it sufficient to conclude, on the facts of this case, that Lora-Pena did willfully cause Marshal Leo to fire the rifle. This is not a case, like Gordon, where the officer intentionally fired at defendant. Rather, the officer here had his firearm discharge solely because defendant assaulted him and was trying to take that firearm. Lora-Pena's conduct was thus clearly relevant under § 1B1.3(a)(1)(A).

challenge the § 2A2.2(b)(2)(A) enhancement. The District Court denied relief because, assuming the government had a duty to produce the report, Lora-Pena could not show prejudice from non-disclosure.

We agree with the District Court that Lora-Pena failed to show prejudice.[4] The sentencing court found that the rifle discharged as a direct result of Lora-Pena's struggle with Marshal Leo, thereby warranting the enhancement. The Trooper's report is consistent with the finding that the firearm was discharged during the struggle, and adds only that Marshal Leo discharged the firearm accidentally. But evidence that Marshal Leo may have squeezed the trigger accidentally while Lora-Pena assaulted him does not at all undermine applicability of the enhancement. As discussed above, § 2A2.2(b)(2)(A) does not distinguish between accidental and purposeful discharges. See United States v. Barton, No. 91-3574, 1992 U.S. App. LEXIS 32990, at *5 (7th Cir. Dec. 16, 1992). Moreover, because Lora-Pena's relevant conduct (i.e., his struggle with and attempt to disarm Marshal Leo) was found to have caused the firearm to discharge, the enhancement properly applied regardless of who pulled the trigger. In fact, the Trooper's report (even

---

[4]"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-282 (1999). "The materiality standard for *Brady* claims is met when the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." United States v. Mitchell, 365 F.3d 215, 254 (3d Cir. 2004) (quotation marks omitted).

10

assuming that it would have been admissible in evidence) is not inconsistent with Marshal Leo's own testimony at trial that he was uncertain whether Lora-Pena had pulled the trigger during the struggle.

In short, because it is clear that the enhancement would have been applied even if the Trooper's report had been before the sentencing court, relief was properly denied.

## III.

We will affirm the District Court's judgment denying the § 2255 motion.