**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1521
_____

DONALD E. BOYD,
                              Appellant

v.

OFFICER RUSSO; JOHN DOE BERGEN COUNTY JAIL OFFICIALS 1 TO 10; LT.
STIO, Individually and in his official capacity; PAUL ACAKIOS, Individually and in his
official capacity; BRIAN PELL, Individually and in his official capacity; CHRIS
SLOMA, Individually and in his official capacity; MICHAEL LAPLACA, Individually
and in his official capacity; OFFICER DIXON, Individually and in his official capacity;
DELORES GUIDA, Individually and in her official capacity; JOANN PARKER,
Individually and in her official capacity; NURSE P. PANZER, Individually and in her
official capacity; DR. HERSHKOWITZ, Individually and in his official capacity;
SAMUEL SOSTRE, Individually and in his official capacity; ALEXIS FITZSIMONS,
Individually and in her official capacity; JOHN DOE DOCTOR
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 07-cv-00769)
District Judge:  Honorable Faith S. Hochberg
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 19, 2013

Before:  AMBRO, HARDIMAN and ALDISERT, Circuit Judges

(Opinion filed: August 27, 2013)
_____

OPINION
_____

PER CURIAM

Pro se appellant Donald Boyd appeals the District Court's order granting summary judgment to the defendant, Dr. John Hershkowitz. We have jurisdiction under 28 U.S.C. § 1291 and exercise a plenary standard of review. See State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 89 (3d Cir. 2009). For the reasons set forth below, we will affirm the District Court's order.

Dr. Hershkowitz is the doctor at the Bergen County Jail (BCJ), where Boyd was previously held; this case concerns the medical treatment Boyd received at BCJ over the period of about a week in April 2006. More specifically, Boyd claims that at the time that he was transferred to BCJ from his previous prison, he was taking three medications: Clonidine for high blood pressure, and Ultram and Feldene for pain relief and arthritis. At BCJ, however, medical officials failed to provide these medications on his first and third days, and Dr. Hershkowitz ultimately prescribed Ultram, but not Feldene, for Boyd's pain. Meanwhile, Boyd alleges, Dr. Hershkowitz prescribed Xanax to him for his anxiety but failed to explain to him the purpose of the prescription or the possible side effects.

Boyd filed a complaint in the District Court in 2007, asserting several claims against numerous defendants. At issue in this appeal, however, are just two claims under 42 U.S.C. § 1983 that Boyd pressed against Dr. Hershkowitz.[1] According to Boyd, Dr.

---

[1] Because Boyd is proceeding pro se, we construe his brief liberally, and will address even those arguments that he has not developed in great detail. See, e.g., United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007). At the same time, we will review only those arguments that he has actually presented. See United States v. Pelullo, 399 F.3d 197, 222

Hershkowitz (1) violated his rights under the Eighth Amendment by failing to provide him with the proper medication, and (2) violated his rights under the Due Process Clause by failing to get his informed consent before administering Xanax. The District Court granted summary judgment to Dr. Hershkowitz on these claims, Boyd filed a timely motion for reconsideration, which the District Court denied, and then Boyd filed a timely notice of appeal to this Court.

We agree with the District Court's disposition of this case. As to Boyd's Eighth Amendment claim, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 n.2 (3d Cir. 1979) (internal quotation marks and citation omitted).

Here, Boyd acknowledges that he was prescribed and provided with several types of medication during his time at BCJ, but contends that his constitutional rights were

(3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."); see also Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam) ("While we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned[.]" (internal citation omitted)).

3

violated by Dr. Hershkowitz's failing to provide him with medication on two days and then prescribing just one medication for pain and arthritis instead of two. These allegations, however, are inadequate as a matter of law. As an initial matter, Boyd has presented no evidence that Dr. Hershkowitz had any reason to suspect that occasionally missing a dose of these routine medications could cause Boyd serious harm. See Zentmyer v. Kendall Cnty., 220 F.3d 805, 811-12 (7th Cir. 2000); Mayweather v. Foti, 958 F.2d 91, 91 (5th Cir. 1992). Moreover, while Boyd believes that he should have received both Ultram and Feldene, rather than just Ultram, we have recognized that courts will "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment[,] which remains a question of sound professional judgment." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal alterations, quotation marks and citation omitted). Accordingly, the District Court did not err in granting judgment to Dr. Hershkowitz on this claim.

Likewise, we will affirm the District Court's order as to Boyd's due-process claim. This claim is based on Boyd's right, as recognized in White v. Napoleon, 897 F.2d 103, 113 (3d Cir. 1990), to be provided "such information as is reasonably necessary to make an informed decision to accept or reject proposed treatment, as well as a reasonable explanation of the viable alternative treatments that can be made available in a prison setting."[2] This right is derivative of a prisoner's underlying right to refuse treatment;

---

[2] Boyd argues that the District Court erred by occasionally referring to the Eighth Amendment while discussing this claim. While we agree with Boyd that this claim is founded on his due-process right to refuse treatment, see White, 897 F.2d at 113, we observe that the District Court repeatedly cited White and invariably articulated the

4

therefore, Boyd was entitled to such information as was necessary for him to decide whether to accept treatment. See id. Thus, to be entitled to relief, Boyd must show that Dr. Hershkowitz, by failing to provide information about Xanax, was deliberately indifferent to Boyd's right to refuse treatment. See Pabon v. Wright, 459 F.3d 241, 251 (2d Cir. 2006).

The undisputed facts reveal that on April 27, 2006, while Boyd was in court, a nurse called Dr. Hershkowitz and told him that Boyd needed a prescription for his pain and arthritis, and that she was concerned about the level of anxiety he was displaying. In response, Dr. Hershkowitz prescribed both Ultram and Xanax, and directed a nurse to travel to court and deliver a dose of each medication to Boyd without delay. Dr. Hershkowitz believed that the nurse would explain to Boyd why the Xanax had been prescribed and what effects it would have, which, the nurses unanimously testified, is what typically occurs when a nurse, rather than a doctor, is the first one to administer a new medication. That arrangement was forestalled here, however, because when the nurse arrived at court, she was specifically informed by the guards that she should not speak directly to Boyd and should limit herself to answering the judge's questions. Therefore, although she was able to tell Boyd, in response to the judge's question, that she had delivered Ultram and Xanax, she was not able to discuss the Xanax with him.[3]

correct standard.

[3] Dr. Hershkowitz makes much of the fact that after Boyd took this medication, he was effusive about its effects, saying, among other things, "it's amazing what one little pill will do to make somebody feel a little bit better. . . . I'm definitely feeling a little better and a little bit level headed and a little bit more clear." However, on this record, there is no way to know whether Boyd was referring to the Xanax or the Ultram, and in the

5

While Boyd is unquestionably correct that he did not in fact receive the information concerning Xanax to which he was entitled under <u>White</u>, he has presented no evidence that Dr. Hershkowitz, by failing to provide the information, was deliberately indifferent to his right to refuse treatment. Rather, the undisputed evidence shows that Dr. Hershkowitz intended for Boyd to receive information about Xanax, but due to an unusual confluence of circumstances (and perhaps some inadvertence), the information did not actually reach Boyd. This is legally insufficient to establish a due-process claim. See <u>Pabon</u>, 459 F.3d at 250.

Accordingly, we will affirm the District Court's order.[4]

---

summary-judgment context, we cannot resolve this issue.

[4] Dr. Hershkowitz's motion to file a supplemental appendix is GRANTED.